Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000642
11-SEP-2018
08:16 AM

NO. CAAP-17-0000642

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

RICHARD STAR, Petitioner-Appellant, vs.
STATE OF HAWAI'I, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(S.P.P. NO. 16-1-0018; CR. NO. 94-1549)

SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Chan, JJ.)

Petitioner-Appellant Richard Star (**Star**) appeals *pro se* from the July 31, 2017 Findings of Fact, Conclusions of Law, and Order Denying Petition for an Evidentiary Hearing Through a Writ of Habeas Corpus Pursuant to Hawai'i Rules of Penal Procedure (**HRPP**) Rule 40 (**Order Denying Rule 40 Petition**), which was entered against him and in favor of Respondent-Appellee the State of Hawai'i (**State**) in the Circuit Court of the First Circuit (**Circuit Court**).[1]

Star asserts one point of error on appeal, contending that the Circuit Court erred in denying his petition without a

---

[1] The Honorable James H. Ashford presided.

hearing. More specifically, Star challenges: (1) Conclusions of Law (**COLs**) 1-3, because they purportedly conclude that his claims lack merit; (2) COLs 5-8, because the Hawai'i Paroling Authority's (**HPA's**) finding that Star "displayed a callous and/or cruel disregard for the safety and welfare of others" required a jury determination, beyond a reasonable doubt; (3) COLs 9-11, because the minimum term hearing was a "contested case" under Hawaii Revised Statutes (**HRS**) chapter 91, and the HPA did not issue findings of fact or conclusions of law; (4) COLs 12-13, because certain wording in the HPA Guidelines is similar to that in HRS § 706-662, which pertains to extended term sentencing, and that he should have been accorded the same due process and procedural protections as given in extended term sentencing; (5) COL 17-21, because (a) the HPA did not consider all of the criteria listed in HRS § 706-669(8) when setting his minimum term; (b) the sole factor of "Nature of Offense" could not justify a minimum term of forty years; and (c) the HPA's determination of his minimum term was not a "uniform determination;" and (6) COLs 22-23, because the HPA did not disclose all of the adverse information that was used against him in setting his minimum term.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, as well as the relevant statutory and case law, we resolve Star's contentions as follows:

2

(1) Star challenges COLs 1-3. However, COLs 1-3 are simply statements of the law regarding HRPP Rule 40 petitions. They are not wrong and they do not directly address Star's claims. Therefore, we reject Star's request to vacate COLS 1-3.

(2) Star next challenges COLs 5-8 and contends that the HPA's determination that he displayed a "callous and/or cruel" disregard for the safety and welfare of his wife constituted an "element" of the offense under Alleyne v. United States, 570 U.S. 99 (2013), and therefore had to be found by a jury beyond a reasonable doubt.

As a preliminary matter, we presume that HPA found that Star "displayed a callous and/or cruel disregard for the safety and welfare" of his wife, who was the person he was convicted of murdering. The HPA Guidelines provide for three Level[s] of Punishment for each type of sentence imposed by the sentencing court. See Hawaiʻi Paroling Authority, Guidelines for Establishing Minimum Terms of Imprisonment 2 (1989), http://dps.hawaii.gov/wp-content/uploads/2012/09/HPA-Guidelines-for-Establishing-Minimum-Terms-of-Imprisonment.pdf (**HPA Guidelines**). For sentences of "Life with Parole," a "Level III" punishment calls for a minimum term between twenty and fifty years. Id. One of the factors that HPA considers in setting a Level III punishment is whether the "Nature of Offense" is such that "[t]he offense was against a person(s) and the offender displayed a callous and/or cruel disregard for the safety and welfare of others." Id. at 6 (emphasis added). According to a

December 15, 2014 HPA Order,[2] HPA relied on one significant factor in determining Star's level of punishment: "Nature of Offense." Because none of the other subsections under "Nature of Offense" could apply to Star's conviction, we presume that HPA found that Star "displayed a callous and/or cruel disregard for the safety and welfare" of his wife. See Fagaragan v. State, 132 Hawai'i 224, 239, 320 P.3d 889, 904 (2014) ("[I]t may be presumed that the HPA intended subsection (b) to serve as the applicable subsection, as Fagaragan's offenses manifestly do not fall within subsections (a) or (c) of the Nature of Offense criteria.").

With this understanding, we turn to Star's argument that Alleyne mandates a jury's determination that Star displayed a "callous and/or cruel" disregard for the safety and welfare of his wife. In Alleyne, petitioner Alleyne was charged with, inter alia, using or carrying a firearm in relation to a crime of violence. Alleyne, 570 U.S. at 103. The sentencing court increased his mandatory minimum sentence from five to seven years pursuant to a federal statute, based solely on the judge's finding, by a preponderance of the evidence, that Alleyne had brandished a firearm in the commission of the offense. Id. at 104. The jury however, had not indicated on the verdict form that it had made such a finding. Id. The United States Supreme Court held that "facts that increase [a] mandatory minimum sentence are . . . elements and must be submitted to the jury and

---

[2] The record from Star's minimum term hearing was not provided either to the Circuit Court or to this court. However, copies of a March 28, 2014 HPA Order and a December 15, 2014 HPA Order were attached to Star's Rule 40 Petition.

found beyond a reasonable doubt." <u>Id.</u> at 108. It then vacated the judgment with respect to Alleyne's sentence and remanded the case for resentencing consistent with the jury's verdict. <u>Id.</u> at 117-18.

However, this court has noted that the HPA Guidelines do not set an initial starting point and increase (or decrease) the minimum term based upon certain criteria, but rather, "[a]ll relevant criteria are evaluated and a level of punishment is determined[.]" <u>Draizen v. State</u>, No. CAAP-12-0000708, 2015 WL 775031 at *2 (Haw. App. Feb. 24, 2015) (SDO). The requirement in <u>Alleyne</u>, that facts which increase mandatory minimum sentences be found by a jury beyond a reasonable doubt, does not apply to HPA minimum term hearings. <u>See</u> <u>Draizen</u>, SDO at *2. Rather, as we previously concluded:

> The HPA Guidelines do not specify an initial starting point such as Level I or II. The HPA Guidelines state: "In reaching a decision on a minimum term, the criteria to be taken into consideration are discussed in Part IV." All relevant criteria are evaluated and a level of punishment is determined; HPA's determination is not based upon an initial starting point which allows for the level to increase or decrease based upon the criteria.

<u>Id.</u>

We conclude that HPA's setting of Star's minimum term, based presumably on a finding that he "displayed a callous and/or cruel disregard for the safety and welfare of others," did not violate the constitutional principles stated in <u>Alleyne</u>. Therefore, the Circuit Court did not err in COLs 5-8.

(3) In challenging COLs 9-11, Star argues that his minimum term hearing was a contested case, and that HPA violated

HRS chapter 91 by failing to enter findings of fact (FOFs) and COLs.

In <u>Turner v. Hawai'i Paroling Auth.</u>, 93 Hawai'i 298, 305, 1 P.3d 768, 775 (App. 2000), this court held that parole hearings were not "contested cases" because, *inter alia*: (1) they are not adversarial proceedings; (2) there is no right to cross-examine witnesses; (3) there is no burden of producing evidence or burden of persuasion placed upon any specific participant; (4) there is no right to submit rebuttal evidence; and (5) participants merely have the opportunity to present testimony and comments.

Likewise, minimum term hearings lack the afore-mentioned attributes and therefore are also not "contested cases" as defined in HRS chapter 91. <u>See</u>, <u>e.g.</u>, <u>Barnett v. State</u>, 91 Hawai'i 20, 32, 979 P.2d 1046, 1058 (1999) (discussing the non-adversarial nature of minimum term hearings); Hawai'i Administrative Rules (HAR) § 23-700-22 (effective 1992).[3]

---

[3]     HAR § 23-700-22 provides:

§ 23-700-22. Procedure for fixing of minimum term. (a) An inmate shall be given at least seven calendar days written notice of the hearing for the fixing of the minimum term.
        (b) An inmate shall be permitted to be assisted and represented by counsel at the hearing.
        (c) An inmate shall be assisted in obtaining counsel if the inmate so requests and states the inmate cannot afford counsel.
        (d) An inmate shall be informed of the inmate's rights under the law.
        (e) An inmate shall be afforded the opportunity to be heard and to present any relevant information.
        (f) The Authority retains the discretion to keep the hearing within reasonable limits and to limit the presentation of evidence or the calling of witnesses.
        (g) An inmate may be afforded the opportunity, subject to security considerations, to consider and review materials the Authority has that pertain to the fixing of the inmate's

(continued...)

Accordingly we conclude that Star's minimum term hearing was not a contested case and the Circuit Court did not err in COLs 9-11.

(4) Star next challenges COLs 12-13 and contends that the wording in the HPA Guidelines under "Nature of Offense" is similar to the wording in HRS § 706-662 regarding extended term sentencing, and that therefore, he should have been accorded the same due process and procedural protections as given in extended term sentencing. However, it appears that Star is simply renewing his argument that his Level III punishment is analogous to an extended term sentence, and therefore he was entitled to a jury determination of the facts supporting the determination that he displayed a callous and/or cruel disregard for the safety and welfare of another. For the same reasons stated above, we reject this argument and therefore conclude that the Circuit Court did not err in COLs 12-13.

(5) Star challenges COLs 17-21, arguing that HPA violated HRS § 706-669(8) because (a) HPA did not consider his

---

[3](...continued)
minimum term.
    (h) The Authority may permit an inmate to waive any or all of inmates rights relative to this section.
    (i) There shall be made and maintained a verbatim stenographic or mechanical record of the minimum term proceedings. No record of subsequent discussions and deliberations need to be made.
    (j) The State shall have the right to be represented at the hearing by the prosecuting attorney who may present written testimony and make oral comments and the Authority shall consider such testimony and comments in reaching its decision. The Authority shall notify the prosecuting attorney of the hearing at the time the prisoner is given notice of the hearing. The hearing shall be opened to victims or their designees or surviving immediate family members.
    (k) The Authority shall prepare and provide the Department of Public Safety, the inmate and the inmate's attorney with a written statement of its decision and order.

criminal history and character; (b) the sole significant factor of "Nature of Offense" could not have justified a forty-year minimum term; and (c) HPA's determination of his minimum term was not a "uniform determination."

First, we note that HRS § 706-669(8) does not support Star's arguments. HRS § 706-669(8) states that "[t]he authority shall establish guidelines for the uniform determination of minimum sentences which shall take into account both the nature and degree of the offense of the prisoner and the prisoner's criminal history and character." (Emphasis added). Star has not presented any argument or evidence that the HPA failed to establish guidelines, nor that those guidelines fail to take into account the nature and degree of the offense and the prisoner's criminal history and character. Nevertheless, to the extent that Star asserts that the HPA has not followed its guidelines, or "has failed to exercise any discretion at all, acted arbitrarily and capriciously so as to give rise to a due process violation, or otherwise violated the prisoner's constitutional rights," we address his arguments below. See Coulter v. State, 116 Hawai'i 181, 184, 172 P.3d 493, 496 (2007); Williamson v. Hawai'i Paroling Auth., 97 Hawai'i 183, 195, 35 P.3d 210, 222.

We reject Star's argument that HPA did not adequately consider his criminal history and character. It appears from HPA's December 14, 2014 Order that HPA determined that "Nature of Offense" was the sole significant factor in determining the level of punishment. However, the Guidelines do not require that HPA give every criterion equal consideration, and we have no basis to

conclude that that HPA did not consider the other criteria and conclude that they were not significant factors in determining Star's minimum term.

Star also argues that the nature of the offense in this case could not have justified a forty-year minimum term. We reject this argument.

"The legislature apparently intended to grant the HPA broad discretion in establishing minimum terms." Williamson, 97 Hawai'i at 189, 35 P.3d at 216. Star cites no authority for his assertion that the sole criterion of "Nature of Offense" is insufficient to support a forty-year minimum term, and we find none. In other cases, this court has concluded that the sole significant factor of "Nature of Offense" was enough to sustain a Level III punishment. See, e.g., Pettway v. State, No. CAAP-13-0000681, 2015 WL 1851523 at *2 (Haw. App. Apr. 22, 2015) (SDO). Furthermore, Star's sentence is within the range set forth in the HPA Guidelines. When issuing a Level III punishment for a sentence of Life with Parole, the HPA may set a minimum term of anywhere from twenty to fifty years. HPA Guidelines at 2.

Accordingly, we cannot conclude that the HPA "failed to exercise any discretion at all, or acted arbitrarily and capriciously abused its discretion so as to give rise to a due process violation or otherwise violated [Star's] constitutional rights" in setting Star's minimum term at 40 years based on the sole significant factor of Nature of Offense. See Williamson, 97 Hawai'i at 195, 35 P.3d at 222.

In addition, Star argues that his minimum term was not a "uniform determination" when compared with other minimum terms set by the HPA. Star references three second degree murder convictions where the convicted person purportedly received shorter minimum terms. However, as noted above, "[t]he legislature apparently intended to grant the HPA broad discretion in establishing minimum terms." Williamson, 97 Hawai'i at 189, 35 P.3d at 216. Furthermore, the HPA Guidelines allow the HPA to set a minimum term of between twenty and fifty years for sentences of "Life with Parole." HPA Guidelines at 2. The mere fact that HPA issued some shorter minimum terms within this range is insufficient to support a conclusion that Star's longer minimum term, also within this range, evidences a lack of uniform determination. We also note that the HPA has issued longer minimum terms in the past, as well as minimum terms equal to the maximum sentence. See, e.g., Draizen, SDO at *1-2 (setting a fifty-year minimum term for conviction of Murder in the Second Degree and sentence of "Life with Parole"); Williamson 97 Hawai'i 193, 35 P.3d 220 (discussing and affirming minimum term equal to the maximum term).

For these reasons, we again cannot conclude that the HPA failed to follow its Guidelines or that it otherwise failed to exercise any discretion at all, acted arbitrarily and capriciously so as to give rise to a due process violation, or otherwise violated Star's constitutional rights in setting Star's minimum term. Accordingly, we conclude that the Circuit Court did not err in entering COLs 17-21.

(6)   Lastly, Star challenges COLs 22-23, contending that the HPA failed to give Star timely access to all of the adverse information it considered when setting his minimum term, contrary to the supreme court's holding in De La Garza v. State, 129 Hawai'i 429, 442, 302 P.3d 697, 710 (2013).   In De La Garza, the petitioner argued that his due process rights were violated because he was not given access to certain documents considered by the HPA, prior to his minimum term hearing.   Id. at 437, 302 P.3d at 705.   The supreme court held:

> The considerations articulated by the D'Ambrosio court demonstrate the need for the convicted person to have access to all of the information considered by the HPA in making the critical "first determination of the actual term the inmate is to serve in prison." . . .   Without access to the potentially wide range of information being considered by the HPA, the convicted person may be unable to prepare a response and rebuttal to any adverse information being considered.   In addition, the convicted person may be unable to correct any errors contained in the "complete report" obtained by the HPA.   Thus, nondisclosure of such information may infringe on the convicted person's due process right to fairness and a meaningful opportunity to be heard.
>
> In light of the critical nature of the HPA's determination of the prisoner's minimum term of imprisonment, due process under Article I, section 5 of the Hawai'i Constitution requires that the prisoner have timely access to all of the adverse information contained in the HPA file.   The HPA must disclose such information "soon enough in advance" that the inmate has a "reasonable opportunity to prepare responses and rebuttal of inaccuracies." In the event that the HPA file of the inmate includes sensitive, or confidential personal information, the inmate is entitled to disclosure of a reasonable summary thereof.

Id. at 441-42, 302 P.3d at 709-10 (citations omitted; emphasis added).

COLS 22 and 23 state:

22.   In Claim E, Petitioner argues that the HPA could not rely on any of the arguments that were made by the Deputy Prosecuting Attorney at the December 10, 2014 minimum term hearing because those arguments were (i) unsupported, (ii) based upon the HPA's unauthorized acts, and (iii) not disclosed to him in writing prior to the hearing. As to (i) and (ii), Petitioner offers no further support, but merely relies on unsubstantiated conclusory statements.   Petitioner

11

cites to <u>De La Garza v. State</u>, 129 Hawaii 429, 442 (2013) where the Supreme Court of Hawaiʻi stated: "In light of the critical nature of the HPA's determination of the prisoner's minimum term of imprisonment, due process . . . requires that the prisoner have timely access to all of the evidence *contained in the HPA file*. The HPA must disclose such information 'soon enough in advance' that the inmate has a reasonable opportunity to prepare responses and rebuttal of inaccuracies." (Emphasis added). In that case, there were three letters contained within the HPA file that the petitioner was not aware of until well-after the minimum term hearing. <u>Id.</u> at 438. Here, Petitioner does not assert that there was anything contained within the HPA's file that he did not receive. Instead, it seems that he is arguing that the Prosecutor's oral argument at the hearing should have been reduced to writing and provided to Petitioner prior to the hearing.

23.   There is no legal basis to support Petitioner's argument that the HPA was required to have the Prosecutor reduce his oral argument to writing prior to the actual hearing. Hawaiʻi Revised Statute §706-669(7) allows for the prosecuting attorney to be present, present written testimony, and make oral comments that the authority shall consider in reaching its decision. There is no requirement that those oral comments be reduced to writing prior to the hearing. Further, it is axiomatic that an attorney's arguments are not evidence. The requirement placed upon the HPA by statute and by the Hawaiʻi Supreme Court regard *evidence* that is *contained in the HPA file*. Thus, Petitioner has failed to state a colorable claim upon which relief may be granted in Claim E.

First, it appears that the Circuit Court interpreted Star's *pro se* argument too narrowly, *i.e.*, that Star asserted only that the State's oral argument at the hearing should have been reduced to writing and provided to Star prior to the hearing. Based on this construction, the Circuit Court denied Star's contention, stating that there was no requirement that the State's oral argument be reduced to writing and provided ahead of time. We agree that neither <u>De La Garza</u> nor HRS § 706-669 require the prosecuting attorney's oral comments to be reduced to writing and provided to the convicted person in advance of the minimum term hearing. However, Star's *pro se* petition appears to argue more broadly that the HPA must have considered adverse

information that was not provided to him in advance of the hearing. Star argued, *inter alia*, "[i]ndeed, since none of the information sent to Petitioner by the HPA defines, supports or even indicates a finding of 'callous and/or cruel' behavior equating to the Level III definition of 'Nature of Offense,' Petitioner is at a loss as to what information was used by the HPA to support its finding."

It appears, however, that the record before the Circuit Court, as well as this court, is insufficient to address the question of whether HPA considered adverse information that was not provided to Star in advance of the hearing. The record does not contain transcripts[4] of the HPA proceeding, nor copies of what was provided to Star, nor what was in his HPA file. We note that HRPP Rule 40(d) provides, in relevant part, that "[t]he respondent shall file with its answer any records that are material to the questions raised in the petition which are not included in the petition." Accordingly, the State was required to provide a sufficient record to Circuit Court for the court to address whether HPA considered adverse information that was not provided to Star in advance of the hearing.

It further appears, based on <u>De La Garza</u>, that if the record of the HPA proceedings supported Star's contention that HPA considered adverse information that was not provided to him in advance of the hearing, Star may have presented a colorable

---

[4] The HPA keeps transcripts of minimum term hearings. <u>See</u> HRS § 706-669(6) (2014) ("A verbatim stenographic or mechanical record of the hearing shall be made and preserved in transcribed or untranscribed form."). However, a transcript was not provided to the Circuit Court with the Rule 40 Petition.

claim for relief.  See De La Garza, 129 Hawai'i at 441-42, 302 P.3d at 709-10; see also D'Ambrosio v. State, 112 Hawai'i 446, 466, 146 P.3d 606, 626 (App. 2006).  "In the absence of sufficient evidence in the record on appeal, an appellate court should remand for the development of such a record."  De La Garza, 129 Hawai'i at 443, 302 P.3d at 711 (citations and internal quotation marks omitted).  Accordingly, we conclude that this case must be remanded for the development of a sufficient record concerning whether HPA gave Star timely access to all of the adverse information it considered in setting his minimum term.

For these reasons, the Circuit Court's July 31, 2017 Order Denying Rule 40 Petition is affirmed in part and vacated in part.  COLs 22 and 23, concerning what was described as Star's Claim E, are vacated, and this case is remanded to the Circuit Court for a hearing pursuant to HRPP Rule 40(f) concerning whether HPA failed to give Star timely access to all of the adverse information it considered in setting his minimum term; the Circuit Court's July 31, 2017 Order Denying Rule 40 Petition is affirmed in all other respects.

DATED: Honolulu, Hawai'i, September 11, 2018.

On the briefs:

Richard Star,
Petitioner-Appellant, *Pro Se*.

Diane K. Taira,
Lisa M. Itomura,
Deputy Attorneys General
for Respondent-Appellee.

Presiding Judge

Associate Judge

Associate Judge

14